UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------
In re:

DOUGLAS M. PALMER and                                 Case No. 08-13952
TRACY L. PALMER,                                      Chapter 13

                              Debtors.
----------------------------------------------------------------

APPEARANCES:

Richard Croak & Associates                           Sandra S. Poland Demars, Esq.
*Attorneys for the Debtors*
314 Great Oaks Boulevard
Albany, NY 12203

Miller & Dubuc                                                 John M. Dubuc
*Attorneys for TCT Federal Credit Union*
14 Corporate Woods Boulevard
Albany, NY 12211

Andrea E. Celli
*Chapter 13 Standing Trustee*
7 Southwoods Boulevard
Albany, NY 12211

Hon. Robert E. Littlefield, Jr., Chief United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

       Currently before the court is the motion of Debtors Douglas and Tracy Palmer ("Debtors") to modify a confirmed Chapter 13 plan to surrender a motor vehicle to TCT Federal Credit Union ("TCT") and reclassify any deficiency as unsecured.[1]

## JURISDICTION

       The court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(a), 157(b)(1), 157(b)(2)(B), 157(b)(2)(L), 157(b)(2)(O) and 1334(b).

---

[1] At the hearing held November 12, 2009, the court rendered an oral decision denying Debtors' motion to modify their confirmed Chapter 13 plan. Based on the likely impact of the decision on future cases, and the absence of clear authority in the area, the court decided to reduce its decision to writing.

1

## FACTS

The relevant facts are not in dispute. On November 25, 2008, Debtors filed a joint voluntary petition under Chapter 13 of the Bankruptcy Code. When they filed, TCT had a purchase-money security interest in their 2001 Chrysler Voyager ("Voyager"). Due to a cross-collateral provision in its loan agreement with the Debtors, TCT also had a non-purchase-money security interest in Debtors' 1990 Chevrolet S-10 ("S-10").

Debtors filed a Chapter 13 plan, which provided for the "cramdown" of the two vehicles. TCT objected to the plan based on the amounts proposed to be paid as secured claims. The parties reached an agreement whereby TCT's secured claim would be valued at $5,232.00, representing the replacement value of the collateral, payable inside the plan at 7 percent interest. Based on the agreement, TCT withdrew its objection to confirmation by letter dated March 25, 2009. The court held a confirmation hearing the following day and confirmed the plan.

The confirmation order reflects TCT's two secured claims, but lists those claims in the amounts of $5,232.00 and $1,025.00. A consent order entered in connection with Debtors' motion to modify lists TCT's total secured claim in the amount of $5,235.00, with a value of $4,197.50 attributable to the Voyager and $1,037.50 attributable to the S-10.

After the confirmation hearing in March, the S-10 was due for its annual inspection. According to the Affidavit of Douglas Palmer, Debtors brought the S-10 to a mechanic and were informed that it could not pass inspection in its current condition and would require repairs. The Affidavit further states that the truck had not been in any accidents or suffered any mechanical problems due to neglect but that it was unsafe to

2

drive due to its age and ordinary use. Unable to afford the repairs, Debtors sought to modify their plan. Approximately two months after confirmation, on May 18, 2009, Debtors filed an amended plan and a motion to modify their plan after confirmation. The proposed modification calls for surrender of the S-10 to TCT.

Andrea E. Celli, Chapter 13 Trustee, objected to the proposed modification. TCT also objected on the basis that the confirmed plan was *res judicata* as to the treatment of TCT's claims. TCT has refused to accept surrender of the collateral.

### DISCUSSION

The issue before the court is whether the Debtors can surrender the 1990 Chevrolet S-10 in full satisfaction of the secured portion of TCT's claim. The court visited this question in the jointly decided cases of *In re Sciotti* and *In re King*, Nos. 99-13400 and 01-14357 (Bankr. N.D.N.Y. Aug. 23, 2002) [hereinafter, *Sciotti*]. There, it was called upon to decide whether any of the three possible bases for modification under the pre-BAPCPA version of section 1329(a) allowed for the *involuntary* transfer of the collateral back to the creditor.[2] After considering the various approaches to the surrender/reclassification issue in the context of a proposed modification to a Chapter 13 Plan, the court held that none of the bases for modification allowed for the involuntary

---

[2] Unless otherwise noted, all statutory references herein are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532. The pre-BAPCPA version of section 1329 provided, in relevant part:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to–
  (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
  (2) extend or reduce the time for such payments;
  (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan . . . .

11 U.S.C § 1329. The pre- and post-BAPCPA versions of section 1329(a) are substantially the same except for the addition to the latter of subsection (a)(4).

3

transfer of collateral back to a secured lien holder or for the reclassification of claims. The court reasoned:

> Section 1329(a)(3) may seemingly allow a surrender by taking account of a payment (i.e., the return of the vehicle) other than under the plan. However, if the modified plan itself proposed the surrender, then the debtor would not have met the statute's requirement of having rendered a "payment . . . other than under the plan" that would then trigger a modification "to the extent necessary to take account of [the payment outside of the plan]." . . . If the surrender, however, is on consent or the result of a creditor's 362 lift stay motion, then after the liquidation of the collateral and application of the proceeds to the secured claim, the issue then shifts to the reclassification of the balance of the claim.

*Sciotti* at 7–8 (alteration in original) (citation omitted). The court agrees now, as it did then, that reclassification in such a situation springs from section 502(j),[3] not section 1329. *Id.* at 8. "Section 502(j) has two prongs: a claim may be reconsidered if 'cause' exists and then substantively decided based on the equities of the case." *Id.* "Cause would be shown by the lack of any collateral to secure the claim. . . . The variable that would go to the heart of the issue would be the equities of the case." *Id.* (citation omitted). Debtors bear the burden of convincing the court that the equities tilt in their favor. *Id.*

Although the equities in *Sciotti* did not support a reclassification, this court stated "that in many instances the reasonable creditor will accept a voluntary surrender of the

---

[3] Section 502(j) provides:

(j) A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case. Reconsideration of a claim under this subsection does not affect the validity of any payment or transfer from the estate made to a holder of an allowed claim on account of such allowed claim that is not reconsidered, but if a reconsidered claim is allowed and is of the same class as such holder's claim, such holder may not receive any additional payment or transfer from the estate on account of such holder's allowed claim until the holder of such reconsidered and allowed claim receives payment on account of such claim proportionate in value to that already received by such other holder. This subsection does not alter or modify the trustee's right to recover from a creditor any excess payment or transfer made to such creditor.

11 U.S.C. § 502.

4

liened property because that enables the immediate receipt of the collateral, the value of which should equal its allowed secured claim minus the depreciation that occurred while the confirmed plan was in place." *Sciotti* at 10.  In those instances, the court noted, "return of the car will constitute a 'payment outside the plan,' triggering section 1329(a)(3), and, perhaps, section 502(j) as well." *Id.* at 10–11.  While *Sciotti* provided examples of what would constitute a "payment outside the plan," it left open, by extension, the possibility that other post-confirmation events could likewise trigger sections 1329(a) and 502(j) of the Code.  For reasons mentioned previously, however, such post-confirmation events do not include the situation where the modified plan itself proposes the surrender.

The court faces "the difficult task of balancing the finality of a confirmed Chapter 13 Plan . . . against the terms and conditions of [section] 1329(a), which permits post-confirmation modification of Chapter 13 plans in certain situations," and section 502(j), which allows, for cause shown, reconsideration of a claim based on the equities of the case.  *See In re Mellors*, 372 B.R. 763, 768 (Bankr. W.D. Pa. 2007).  "Modification under section 1329 'is based on the premise that, during the life of the plan, circumstances may change, and parties should have the ability to modify the plan accordingly.'"  *In re Sellers*, 409 B.R. 820, 824 (Bankr. W.D. La. 2009) (quoting *Meza v. Truman (In re Meza)*, 467 F.3d 874, 877 (5th Cir. 2006)).  A predicate to invoking relief under section 1329 "is a showing by the proponent of the plan modification that a material change in circumstances, not reasonably anticipated at the time of confirmation, has occurred that would warrant relief from the prior confirmed plan." *In re Mellors*, 372 B.R. at 769, 770 n.10; *accord In re Jacobs*, 263 B.R. 39, 46 (Bankr. N.D.N.Y. 2001).

5

The Debtors ask the court to revisit its decision in *Sciotti* and cite two post-BAPCPA cases in support of their motion to modify.  The first is *In re Lane*, 374 B.R. 830 (Bankr. D. Kan. 2007); the second, *In re Sellers*, 409 B.R. 820.  These cases offer little guidance as they are readily distinguishable from the case at bar.

In *Lane*, the first of the two cases relied upon by Debtors in support of their motion to modify, the United States Bankruptcy Court for the District of Kansas

> allowed modification of a plan under [sections] 1329(a)(1) and (3) where a motor vehicle securing a creditor's 910 claim was destroyed post-confirmation and the creditor received payments outside the plan from the motor vehicle insurer.  The post-confirmation *destruction* of the collateral through no fault of the debtor or the creditor was held to be cause for reconsideration of the allowed claim under [section] 502(j).  Destruction rendered it no longer equitable that debtors be required to pay according to the confirmed plan and justified relief from the allowance of the 910 claim as fully secured.  The creditor's receipt of the proceeds of the insurance on the collateral constituted payment outside the plan allowing modification under the authority of § 1329(a)(3) and requiring modification of payments to the 910 creditor under § 1329(a)(1).  Amendment of the plan to terminate payments on the 910-claim as of the date of destruction of the collateral and to pay the remaining portion of the creditor's claim as an unsecured claim was allowed.

*In re Kuhasz*, No. 07-20282, 2008 WL 5539788 , at *4 (Bankr. D. Kan. Nov. 19, 2008) (emphasis added) (citing *In re Lane*, 374 B.R. 830 (Bankr. D. Kan. 2007)).  In this case there has been no destruction of the collateral, the S-10.  Nor have there been payments outside the plan from a motor vehicle insurer.  Rather, the impetus for modification here was the S-10's failure to pass a motor vehicle inspection.  Moreover, *Lane* focused on the relationship between plan amendment and 910-claims.  *See Lane*, 374 B.R. at 833.  The Code, as amended, provides unique treatment for purchase-money secured claims arising from a debtor's purchase of a vehicle for personal use within 910 days of filing.

6

However, that issue is not before the court in this case. TCT's claim is a non-PMSI, non-910-claim.

In *Sellers*, the second of the two cases relied upon by Debtors in support of their motion to modify, the United States Bankruptcy Court for the Western District of Louisiana interpreted the express terms of section 1329 as allowing a proposed plan modification to elect either retention or surrender of collateral. 409 B.R. at 828. It reasoned that "[n]othing in 1329 or 1325(a)(5) indicates that a plan modification should be treated any differently than plan confirmation with respect to the treatment of secured claims." *Id.* (citation omitted). Based on this peculiar reading of section 1329, the court then considered the application of section 502(j). It held that the equities in the case—where the debtor suffered post-confirmation medical problems, incurred additional medical expenses, and could no longer afford to pay for the collateral securing the claim—tilted in favor of modification. Again, the only post-confirmation event in the present case is the S-10's failure to pass a motor vehicle inspection.

While the parties do not cite to it, the strongest case in support of Debtors' motion to modify appears to be *In re Mellors*, 372 B.R. 763. In *Mellors*, the United States Bankruptcy Court for the Western District of Pennsylvania allowed modification of debtors' Chapter 13 plan when the debtors learned, post-confirmation, of structural problems that rendered their retained vehicle inoperable.

The facts in *Mellors* are similar to the facts in this case. Creditor Coastal Credit financed the debtors' purchase of a used 1999 Mercury Villager ("Villager"). The security interest obtained by Coastal Credit in the Villager was not a purchase-money security interest; it was a garden-variety lien. 327 B.R. at 766. There, as here, an initial

7

dispute arose as to the amount of the creditor's secured claim. *Id.* Given the disparity of their respective positions, and to avoid a contested plan confirmation hearing and a contested "cram down" action, the parties resolved their differences and reached an agreement whereby the Villager would be deemed to have a secured value of $8,823.84. *Id.* at 766–67.

The plan was confirmed. *Id.* at 767. About one month after confirmation, the debtor took his vehicle to be inspected. *Id.* "Debtor was asked if he had recently been in an accident because the frame in his car was cracked and needed to be repaired prior to having an inspection sticker placed on it. The [d]ebtor was told that the cost of repairing the frame would be several thousand dollars." *Id.* He could not afford the lump sum payment to repair the vehicle and remove it from the inspection station. *Id.* "As a result of this discovery, the Debtor's *only* vehicle . . . remain[ed] at the inspection station, inoperable. Although the vehicle had been inspected at previous inspection stations, this defect had never been discovered." *Id.* (emphasis added). The husband debtor needed the vehicle to travel to and from work. *Id.* at 766.

The Mellors filed an amended Chapter 13 Plan on the basis that they could not afford to pay for the inoperable vehicle and finance a replacement vehicle at the same time. *Id.* at 767. The amended plan called for surrender of the Villager to Coastal Credit and for the treatment of any deficiency as an unsecured claim. *Id.* at 768.

Coastal Credit objected to the confirmation of the Mellors' amended Chapter 13 plan. In support of its argument against modification, Coastal Credit relied on the Sixth Circuit decision in *In re Nolan*, 232 F.3d 528 (6th Cir. 2000). Coastal Credit also argued that "where parties agree to a fair crammed-down value of collateral, and where the

8

creditor actively participates in establishing this value, it is inequitable to shift the risk of the collateral's depreciation back to the creditor after the debtor has used and abused the collateral." *In re Mellors*, 372 B.R. at 768.

Relying on sections 1329(a) and 502(j) of the Code, the *Mellors* court concluded that modification was appropriate because the Villager's cracked frame was something that was unanticipated and undiscovered until after confirmation of the debtors' Chapter 13 Plan. *Id.* at 772. The parties' agreement, setting the secured value of the Villager at around $9,000.00, rested on the mistaken assumption that the vehicle was operable. *Id.* at 776. The change of circumstances was material because the Villager was the debtors' sole source of transportation and was used to transport Mr. Mellors to and from work. *Id.* at 772. As a result, the inoperable vehicle impaired the debtors' ability to complete their plan. *Id.* In reaching its decision, the court was mindful of *Nolan*'s admonition that proposed surrenders do not adequately protect secured creditors because they allow debtors to unnecessarily shift the burden of depreciation from themselves to the secured creditors. *See id.* at 773, 776 (citing *Nolan*, 232 F.3d at 533). The court noted, nevertheless, that the Mellors had at all times proceeded honestly and in good faith and were not seeking to reap a windfall at the expense of their creditor. *See id.* at 774 n.16. Based on the particular circumstances of Mellors' case, the court found ample cause to reconsider the allowed amount of Coastal Credit's secured claim. *Id.* at 776.

Returning to the present case, the circumstances are sufficiently different from those in *Lane*, *Sellers*, and *Mellors* that reconsideration of TCT's claim and plan modification should not be permitted on the bases set forth in those cases. *See In re Kuhasz*, No. 07-20282, 2008 WL 5539788 , at *5 (Bankr. D. Kan. Nov. 19, 2008). In

9

this case, Debtors agreed to retain the S-10 as part of their Chapter 13 Plan. There have been no material changes in circumstances, not reasonably anticipated at the time of confirmation, which would trigger section 1329 relief. Each year, drivers anticipate that their vehicles may require some repair to pass inspection. There is no indication in the record that the S-10 in this case, like the Villager in *Mellors*, concealed any latent, undiscoverable defects, or that the parties relied on any mistaken assumption in setting its value at $1,037.50. Moreover, the court is not inclined to depart from its holding, set forth in *Sciotti*, that debtors may not avail themselves to the benefits of section 1329 when the modified plan itself proposes the surrender. Even if this court were to apply section 1329 to this case, there exists no "cause" for reconsideration under 502(j) because the S-10 has been neither destroyed nor repossessed. There is still collateral to secure the claim. Finally, the equities in this case do not tilt in favor of modification because the S-10 is not the Debtors' sole source of transportation and is not required by Debtors to complete their plan.

The court echoes its concern voiced in *Sciotti* that allowing "the reclassification of this claim on these facts would be tantamount to declaring open season on secured creditors in general" and TCT in particular. *Sciotti* at 10. "The plan as confirmed is binding upon the Debtors. There have been no events which make it inequitable that Debtors be bound by the confirmed plan." *See Kuhasz*, 2008 WL 5539788, at *5. Under the circumstances of this case, given the Code's policy of finality of confirmed plans, there is no basis to amend the confirmed plan. *See Celli v. First Nat'l Bank of Northern New York* (*In re Layo*), 460 F.3d 289 (2d Cir. 2006); 11 U.S.C. § 1327.

## CONCLUSION

Therefore, the court hereby denies Debtors' motion to modify their confirmed Chapter 13 Plan.

It is SO ORDERED.

Dated: Albany, New York
November 16, 2009

/s/ Robert E. Littlefield, Jr.
_____

Hon. Robert E. Littlefield, Jr.
Chief United States Bankruptcy Judge